IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRIS ROSALES, ) | |
| ) | Case No. 18-cv-0997 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| PORTFOLIO RECOVERY ) | |
| ASSOCIATES, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Iris Rosales brought this class action complaint against Portfolio Recovery Associates, LLC ("PRA") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq* ("FDCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et. seq* ("ICFA") relating to PRA's attempt to collect an unpaid bill connected with a consumer credit card. Before the Court is PRA's motion to compel arbitration. For the reasons stated below, the Court grants PRA's motion.

**Procedural Background**

The Court originally granted PRA's motion to compel arbitration in January 2019, but upon reconsideration, allowed limited discovery regarding PRA's purchase of Rosales' debt from the original creditor, World Financial Network Bank ("WFNB"), along with whether PRA purchased the right to enforce the arbitration clause in consumer credit card agreement. Whether PRA's purchase of Rosales' charged-off account conferred upon PRA the right to arbitrate is the only issue remaining in this motion because the Court has already decided that PRA did not waive its right to arbitrate, both in the January 2019 ruling and upon reconsideration. In addition, the parties do not dispute that the credit card agreement at issue has an arbitration clause, which states: "Arbitration may be elected by any party with respect to any Claim." (R. 45, Ex. B. ¶ 30(4)).

**Legal Standard**

A motion to dismiss under Rule 12(b)(3) for improper venue is the appropriate procedure when a litigant seeks to dismiss a lawsuit based on an arbitration agreement. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). When making a determination under Rule 12(b)(3), district courts may consider materials outside of the pleadings, including the parties' arbitration agreement. *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). In determining whether an agreement's arbitration clause controls, federal courts apply state-law principles of contract formation. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019).

**Discussion**

Whether PRA has the right to enforce the arbitration agreement is a matter of the Court construing the September 9, 2011 Purchase and Sales Agreement between PRA, the Purchaser, and WFNB, the Seller. In construing the parties' intent, it is black letter law that courts give contract terms that are clear and unambiguous their plain and ordinary meaning in the context of the contract as a whole. *See Royce v. Michael R. Needle P.C.,* 950 F.3d 939, 951 (7th Cir. 2020). The relevant section of the September 2011 agreement, Sale of Accounts, states in part:

> (a) Purchaser represents and warrants to Seller that Purchaser's primary purpose in purchasing Charged-off Accounts is to attempt legal collection of the Unpaid Balances owed on such Charged-off Accounts.
>
> (b) Subject to the terms of this Agreement, on each Closing Date, Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off Accounts[.]

(R. 104, 9/09/11 Purchase & Sales Agmt.) Under the plain and ordinary meaning of the contract, PRA purchased ***all*** of WFNB's rights, title, and interest in the charged-off accounts.

PRA also provides the unrebutted sworn affidavit of Meryl Dreano, the Custodian of Records at PRA, as well has her deposition testimony, to further support the fact that PRA

2

purchased all of WFNB's rights in the charged-off accounts. In her declaration, Dreano averred:

> Iris Rosales, plaintiff in the above-captioned matter ("Rosales"), maintained a credit card account with Victoria's Secret. The original creditor of Rosales' Victoria's Secret account is World Financial Network Bank. After Rosales failed to pay her past due balance on the account, Rosales' account was charged-off and PRA purchased Rosales' account on August 28, 2012, acquiring all rights, title, and interest in the account from World Financial Network Bank.

(R. 32-1, Ex. A, Dreano Decl. ¶ 4.) PRA attached this declaration to its motion to compel before the parties conducted discovery. At her deposition, Dreano testified as follows:

> Q: What do you mean by the phrase you used, quote, acquiring all rights, title, and interest in the account from World Financial Network Bank, period, end quote?
>
> A: That means that we [PRA] acquired 100 percent of their [WFNB] interest in this particular account and they retained no interest in the account.
> …
>
> Q: And do you, do you have any personal knowledge as to whether PRA acquired the right to enforce arbitration in relation to Miss Rosales' account?
>
> A: Yes.
>
> Q: What's the basis for your personal knowledge?
>
> A: The information in the credit card agreement.
> …
>
> Q: [W]hat's your basis for stating that PRA obtained the right to enforce any arbitration terms that might be contained within the credit card agreement, which is Exhibit 2?
>
> A: There is an arbitration provision in the credit card agreement. And when the account was assigned to [PRA], those rights were assigned to us.
> …
>
> Q: Now, what I want to circle back to, though, is what's the basis for your personal understanding that PRA acquired the right to enforce the arbitration language that is contained in Exhibit 2 – which is the credit card agreement?
>
> A: To the best of my knowledge, when we purchase the accounts from the seller, we require all of their rights and interest in the accounts to do what's ever necessary in collections. So when we purchase the accounts, we're stepping into the shoes of the seller. And if they have the right to enforce arbitration under the credit card agreement, then we have that right.

3

(98-2, Ex. B, 6/19/19 Dreano Dep., at 39-51.) Under this additional support, it is clear that PRA obtained the rights to enforce the arbitration clause when it purchased Rosales' charged-off account.

Rosales has not set forth any evidence that PRA did not acquire the rights to arbitrate disputes under the credit card agreement, even though the Court granted the parties the opportunity to conduct discovery. Also, Rosales does not argue that the September 9, 2011 Purchase and Sales Agreement is ambiguous, and thus extrinsic evidence is necessary to determine the parties' intent. *See Roberts v. Alexandria Transp., Inc.*, 968 F.3d 794, 799 (7th Cir. 2020). As such, based on the unequivocal language of the Purchase and Sales Agreement, as well as the supporting declaration and deposition testimony, PRA obtained the right to enforce the arbitration clause once it purchased Rosales' charged-off account.

**Conclusion**

Based on the foregoing, the Court grants defendant's motion to compel arbitration.

**IT IS SO ORDERED.**

Date: 10/5/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

4